ORIGINAL

1  **PERKINS COIE, LLP**
   Julie Schwartz (Bar No. 260624)
2  3150 Porter Drive
   Palo Alto, California 94304-1212
3  Telephone: (650) 838-4300                    FILED
   Facsimile: (650) 838-4350
4  E-Mail: JSchwartz@perkinscoie.com
                                                 SEP 28 2015
5  Attorneys for Amazon.com, Inc.
                                                 SUSAN Y. SOONG
6                                                CLERK, U.S. DISTRICT COURT
                                                 NORTHERN DISTRICT OF CALIFORNIA
7                                                       SAN JOSE

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

                                                           **PSG**
11            **CV 15   80243 MISC.**

12 AMAZON.COM, INC.,                       Misc. Case No.

13                    Movant,              Action pending in the United States District
                                           Court for the Western District of Washington
14         v.                              (No. 2:14-CV-01038-JCC)

15 APPLE INC.                              MISCELLANEOUS ACTION: NOTICE OF
                                           MOTION AND MOTION TO TRANSFER
16                    Respondent.          OR COMPEL COMPLIANCE WITH
                                           SUBPOENA; MEMORANDUM OF POINTS
17                                         AND AUTHORITIES IN SUPPORT
                                           THEREOF
18
19                                         Date:  November 4, 2015
                                           Time:  9:00 a.m.
20
21
22
23
24
25
26
27
28
   _____
   AMAZON'S MOTION TO TRANSFER OR COMPEL
   128027836.5

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

I.  ISSUES TO BE DECIDED ........................................................................................1

II.  INTRODUCTION .......................................................................................................1

III.  RELEVANT FACTUAL BACKGROUND .................................................................2

    A.  The Underlying Action .....................................................................................2

    B.  The Subpoena ...................................................................................................2

IV.  LEGAL STANDARD .................................................................................................5

V.  ANALYSIS ..................................................................................................................5

    A.  Exceptional Circumstances Exist That Warrant Transferring This Motion to the Issuing Court ...........................................................................................5

    B.  Apple Should Be Ordered to Comply with the Subpoena .................................7

        1.  The Requested Documents Are Relevant ...............................................7

        2.  The Requests Are Not Overly Broad or Unduly Burdensome ................10

        3.  The Information Requested Is Not Publicly Available............................11

        4.  Apple's Confidentiality Concerns Can Be Addressed Through a Heightened Protective Order ................................................................12

VI.  CONCLUSION ..........................................................................................................13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elec., Inc.*,
  No. 14 C 3731, 2014 WL 2808984 (N.D. Ill. June 20, 2014) .................................................. 6, 7

*Donohue v. Apple, Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................................................ 8

*F.T.C. v. v. A± Fin. Ctr., LLC*,
  No. 1:13-MC-50, 2013 WL 6388539 (S.D. Ohio Dec. 6, 2013) ............................................. 6, 7

*F.T.C. v. Wyndham Worldwide Corp.*,
  No. 14-3514, 2015 WL 4998121 (3d Cir. Aug. 24, 2015) ......................................................... 8

*Federal Trade Commission v. Amazon.com, Inc.*,
  Cause No. 2:14-CV-01038-JCC ................................................................................................. 2

*FTC v. J.K. Publications, Inc.*,
  99 F. Supp. 2d 1176 (C.D. Cal. 2000) ........................................................................................ 9

*Gonzales v. Google, Inc.*,
  234 F.R.D. 674 (N.D. Cal. 2006) ............................................................................................... 5

*In re Int'l Harvester Co.*,
  104 F.T.C. 949 (1984) ................................................................................................................. 7

*Jacobs v. Quinones*,
  No. 1:10-CV-02349-AWI-JL, 2014 WL 5426323 (E.D. Cal. Oct. 23, 2014) ........................... 5

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*,
  301 F.R.D. 426 (N.D. Cal. 2014) ............................................................................................. 6, 7

*Orkin Exterminating Co. v. FTC*,
  849 F.2d 1354 (11th Cir. 1988) ............................................................................................... 10

*Parks, LLC v. Tyson Foods, Inc.*, No. MISC.A. 15-634, 2015 WL 5008255 (W.D.
  Pa. Aug. 20, 2015) ................................................................................................................... 6, 7

*Wultz v. Bank of China, Ltd.*,
  304 F.R.D. 38 (D.D.C. 2014) ................................................................................................... 6, 7

**STATUTES**

15 U.S.C. § 45(n) ..................................................................................................... 2, 7, 8, 9

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

RULES

4

Fed. R. Civ. P. 26 ................................................................................................................5

5

Fed. R. Civ. P. 26(b)(1) ......................................................................................................5

6

Fed. R. Civ. P.  30(b)(6) ..................................................................................................6, 9

7

Fed. R. Civ. P. 34 ................................................................................................................5

8

Fed. R. Civ. P. 34(a) ...........................................................................................................5

9

Fed. R. Civ. P. 45 ................................................................................................................5

10

Fed. R. Civ. P. 45(f) ........................................................................................................1, 5

11

OTHER AUTHORITIES

12

http://www.macrumors.com/2013/03/22/apple-adds-offers-in-app-purchases-
13       disclosure-for-app-store-apps/ ..............................................................................12

14

https://support.apple.com/en-us/HT204396 .....................................................................12

15

https://www.ftc.gov/news-events/press-releases/2014/03/ftc-approves-final-order-
16       case-about-apple-inc-charging-kids-app ..................................................................2

17

http://www.wired.com/2009/10/in-app-commerce/; ...........................................................3

18

http://www.macworld.co.uk/feature/iosapps/ios-9-download-now-should-you-
19       update-ipad-iphone-how-to-upgrade-ios-8-download-install-3495266/ ................12

20

http://www.macworld.com/article/2683693/how-to-upgrade-to-ios-8-and-
21       downgrade-to-ios-7-if-you-regret-it.html ..............................................................12

22

23

24

25

26

27

28

AMAZON'S MOTION TO TRANSFER OR COMPEL
128027836.5

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** |
| 3 | Please take notice that on November 4, 2015 at 9:00 a.m. in the United States District |
| 4 | Court for the Northern District of California, 280 South First Street, San Jose, California, |
| 5 | Amazon.com, Inc. ("Amazon") will move to compel Apple Inc.'s ("Apple") compliance with a |
| 6 | subpoena issued by the United States District Court for the Western District of Washington (the |
| 7 | "Subpoena") in an action pending in that district and captioned *Federal Trade Commission v.* |
| 8 | *Amazon.com, Inc.*, Cause No. 2:14-CV-01038-JCC. Apple served written objections to the |
| 9 | Subpoena on September 23, 2015, and has refused to produce any of the documents requested |
| 10 | therein. |
| 11 | Amazon asks that this Court transfer this subpoena-related motion for resolution by the |
| 12 | issuing Court in the Western District of Washington, pursuant to Federal Rule of Civil Procedure |
| 13 | 45(f). Alternatively, Amazon requests that Apple be ordered to comply with the Subpoena. |
| 14 | In accordance with Federal Rule of Civil Procedure 37(a)(1) and Civil Local Rule 37-1, |
| 15 | Amazon certifies that it has conferred in good with counsel for Apple, but was unable to resolve |
| 16 | the issues raised in this motion. |
| 17 | DATED: September 28, 2015                    **PERKINS COIE** LLP |
| 18 | |
| 19 | By: _Julie E. Schwartz_ |
| | Julie E. Schwartz |
| 20 | Attorneys for Amazon.com, Inc. |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

AMAZON'S MOTION TO TRANSFER OR COMPEL
128027836.5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  ISSUES TO BE DECIDED

1.  Whether exceptional circumstances exist that warrant transferring this motion to the United States District Court for the Western District of Washington.

2.  Whether Apple should be compelled to comply with the Subpoena at issue.

## II.  INTRODUCTION

On September 8, 2015, Amazon served Apple with a Subpoena in connection with an action pending in the United States District Court for the Western District of Washington (the "Issuing Court"), in which Amazon is the defendant (the "Underlying Action"). In the Underlying Action, the plaintiff Federal Trade Commission ("FTC") alleges that Amazon's billing practices relating to "in-app purchases" constitute an unfair business practice, in violation of Section 5 of the FTC Act. Amazon's Subpoena to Apple seeks information about Apple's in-app purchase policies and practices that are relevant to the Underlying Action. Despite Amazon's agreement to narrow the Subpoena and its good faith efforts to try to avoid motion practice, Apple has refused to produce any documents in response to the Subpoena.

As an initial matter, this Court need not consider the propriety of the Subpoena or the validity of Apple's objections because exceptional circumstances exist that warrant transferring this motion to the Issuing Court pursuant to Federal Rule of Civil Procedure 45(f). Specifically:

- Similar motion practice is before the Issuing Court in the Underlying Action, and failure to transfer this motion could result in inconsistent rulings that impair Amazon's ability to present its defenses;

- Resolution of the motion would require the Court to conduct duplicative and unnecessary review given the similar motions before the issuing court;

- Resolution of this motion requires consideration of the issues presented in the Underlying Action, and the Issuing Court is more familiar with the relevant issues as well as any implications that resolution of the motion will have on the Underlying Action.

Alternatively, if the Court declines to transfer this motion, it should compel Apple to comply with the Subpoena, as narrowed by Amazon on September 25. As discussed below, the

1

1  Subpoena seeks information that is directly relevant to the Underlying Action, and compliance

2  would impose minimal burden on Apple.

3               III.    RELEVANT FACTUAL BACKGROUND

4  **A.    The Underlying Action**

5       The Subpoena pertains to a case pending in the United States District Court for the

6  Western District of Washington, *Federal Trade Commission v. Amazon.com, Inc.*, Cause No.

7  2:14-CV-01038-JCC.  Declaration of Jeffrey M. Hanson ("Hanson Decl.") Ex. A.  The

8  Underlying Action concerns the practice of "in-app purchasing," which allows customers to

9  purchase content through games and other applications ("apps") on mobile devices such as tablets

10  and phones.  *See* Hanson Decl. Ex. B (Compl.), Ex. C (Answer).  The FTC's Complaint alleges

11  that Amazon's billing practices as applied to in-app purchases by children were unfair practices

12  under Section 5 of the FTC Act, 15 U.S.C. § 45(n).  Hanson Decl. Ex. B (Compl.), ¶¶ 33-35.

13       To prove its case, the FTC must establish, among other things, that Amazon's customers

14  could not "reasonably avoid" the alleged harm caused by the purported unauthorized in-app

15  purchases and that the alleged harm was not substantially outweighed by countervailing benefits

16  to consumers and to competition.  15 U.S.C. § 45(n).  Directly at issue, therefore, are whether

17  (1) Amazon's in-app practices—including disclosures and parental controls—were sufficient for

18  customers to reasonably avoid allegedly unauthorized in-app purchases; (2) Amazon's generous

19  refund policies were sufficient to allow customers to reasonably avoid harm from such purchases;

20  and (3) Amazon's practices and procedures met or exceeded industry standards in the new and

21  developing app market.

22  **B.    The Subpoena**

23       Apple was the first company to make available and widely market in-app purchases.  The

24  FTC investigated Apple's in-app purchasing practices as they relate to purchases by children, and

25  the investigation resulted in a 2014 Consent Decree between Apple and the FTC.[1]  Amazon began

26  _____

27  [1] "FTC Approves Final Order in Case About Apple Inc. Charging for Kids' In-App Purchases Without Parental Consent," FTC Press Release (Mar. 27, 2014), at

28  https://www.ftc.gov/news-events/press-releases/2014/03/ftc-approves-final-order-case-about-apple-inc-charging-kids-app.

                                    2

offering in-app purchasing through apps sold via the Amazon Appstore beginning in November
2011, more than two years after Apple began offering in-app purchases.[2] In July 2014, the FTC
initiated the Underlying Action against Amazon, asserting an similar allegations against Amazon
that the FTC has alleged in its investigation of Apple.  Hanson Decl. Ex. B (Compl.).

       Amazon served the Subpoena on Apple on September 8, 2015, and narrowed its requests
on September 25.  Hanson Decl. Exs. A, E.  As narrowed, the Subpoena consists of three targeted
requests for documents (collectively, the "Requests"):

- Request No.1: Produce documents, including device screenshots, sufficient to
  show, from [March 1, 2011, through December 31, 2012], the processes by which
  an Apple customer would identify, select, and complete an In-App Purchase,
  including identification, selection, and purchase of the App from which an In-App
  Purchase could be made and the various controls, protections, disclosures, or
  notifications utilized by Apple that were intended to avoid accidental In-App
  Charges (such as parental controls, password prompts, PINs, or other disabling
  tools or notifications to the customer that such a purchase had been transacted).
  To the extent the processes changed over time, produce documents sufficient to
  show how and when the process changed and time period during which each
  unique process was in effect.  ["[T]he request seeks to capture changes in the [in-
  app] purchase flow relevant to alleged unauthorized or accidental purchases, not
  cosmetic or other nonsubstantive changes."]

- Request No. 2: Produce documents sufficient to show, from inception of In-App
  Purchasing to [December 31, 2013], Apple's customer-service policies and
  practices applicable to In-App Purchases, including the various means and
  methods by which customers could seek and receive refunds from Apple for
  unauthorized or accidental In-App Charges.  To the extent the policies and
  practices changed over time, produce documents sufficient to show how and when
  they changed and the time period during which each unique policy or practice was
  in effect.  ["Amazon seeks documents sufficient to show Apple's public-facing
  policies and its internal policies and practices that provided guidance to customer
  service agents on how to handle refund requests for allegedly unauthorized or
  accidental in-app purchases. . . .  If Apple produces documents sufficient to satisfy
  Request No. 3, then Amazon would be willing to limit (if applicable) the time
  frame for Request No. 2 to the corresponding period covered by Request No. 3."]

- Request No. 3: Produce documents and data sufficient to show, by month, the
  number of units and the dollar amount of In-App Charges that were refunded by
  Apple to its customers; for each refund measure, the percentage of Apple's total
  In-App Charges (the numerator should be the total number of units or total dollar

---

[2] See, e.g., Brian X. Chen, "Apple Allows In-App Purchases in Free iPhone Apps," (Oct.
15, 2009), http://www.wired.com/2009/10/in-app-commerce/; Hanson Decl. Ex. B (Compl.) ¶ 8
("Amazon began billing for in-app charges in November 2011 . . . .").

3

1      amount refunded in a particular month and the denominator should be,
respectively, the total number of units or total dollar amount of revenue of In-App
2      Purchases in the corresponding month); and the percentage of Apple's granted In-
App Charge refund requests (the numerator should be the total number of refunds
3      granted in a particular month and the denominator should be the total number of
In-App Charge refunds requested in that same month).  The relevant time period
4      for this request is from inception of In-App Purchasing through November 30,
2014.  ["Amazon is willing to limit the request to the periods covered by
5      documents/data provided to the FTC, assuming such information was in fact
provided to the FTC."]
6

7 Hanson Decl. Exs. A, E (bracketed language reflects Amazon's narrowing of the requests in

8 September 25 correspondence).

9      Apple served responses on September 23, refusing to produce any documents based on the

10 following objections to the Requests:

11
-   Not relevant and not reasonably calculated to lead to the discovery of admissible
12      evidence because the FTC's dispute with Amazon relates solely to Amazon's
conduct (Request Nos. 1, 2, 3)
13

14
-   Overly broad and unduly burdensome (Request Nos.1, 2, 3)
15
-   Documents are publicly available (Request Nos. 1, 2)
16
-   Improper interrogatory directed to a nonparty (Request Nos. 1, 2, 3)
17
-   Seeks information unrelated to in-app purchases by children (Request Nos. 2, 3)
18
-   Seeks confidential business information (Request No. 2, 3)
19
-   Attorney-client privilege, attorney work product, or any other privilege (Request
20      No. 2)

21 Hanson Decl. Ex. D.

22      On September 25, counsel for Amazon and Apple participated in a meet and confer.

23 Hanson Decl. ¶ 6.  Later that day, Amazon narrowed the Request Nos. 1-3 and withdrew Request

24 No. 4 altogether.  Counsel for Amazon and Apple participated in a second meet and confer on

25 September 28.  Hanson Decl. ¶ 7.  Despite Amazon's good-faith efforts to reach an acceptable

26 compromise, Apple has refused to produce any documents in response to the Subpoena.  *Id.*  If

27

28

AMAZON'S MOTION TO TRANSFER OR COMPEL
128027836.5

1   this Court declines to transfer the motion to the Issuing Court, Amazon asks the Court to order

2   Apple to comply with the Subpoena, as narrowed by Amazon.

3                                    **IV.    LEGAL STANDARD**

4          The scope of permissible discovery pursuant to a nonparty subpoena is the same as applies

5   to parties under Federal Rules of Civil Procedure 26 and 34.  Fed. R. Civ. P. 45 advisory

6   committee's note to 1991 amendment; *Jacobs v. Quinones*, No. 1:10-CV-02349-AWI-JL, 2014

7   WL 5426323, at *1 (E.D. Cal. Oct. 23, 2014) ("Rule 45 permits issuance of subpoenas for

8   discovery from a nonparty equivalent to discovery from parties under Rule 34.").  A subpoena

9   permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or

10  defense." Fed. R. Civ. P. 26(b)(1), 34(a).  To be relevant, information need only be "reasonably

11  calculated to lead to admissible evidence," and "[t]his requirement is liberally construed to permit

12  the discovery of information which ultimately may not be admissible at trial." *Id.*; *Gonzales v.

13  Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).  "[A] court determining the propriety of a

14  subpoena balances the relevance of the discovery sought, the requesting party's need, and the

15  potential hardship to the party subject to the subpoena." *Gonzales*, 234 F.R.D. at 680.

16                                    **V.    ANALYSIS**

17         This Court need not address the propriety of the Subpoena, or the merits of Apple's

18  objections, because exceptional circumstances exist that warrant transferring this motion to the

19  Western District of Washington.  If, however, the Court reaches the merits, it should grant

20  Amazon's motion.  The Subpoena seeks information that is directly relevant to the underlying

21  matter, and any burden these requests impose on Apple will be minimal because Apple has

22  already collected and provided to the FTC most, if not all, of the requested documents.

23  **A.    Exceptional Circumstances Exist That Warrant Transferring This Motion to the
          Issuing Court**

24

25         Federal Rule of Civil Procedure 45(f) provides that "[w]hen the court where compliance is

26  required did not issue the subpoena, it may transfer a motion under this rule to the issuing

27  court . . . if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).  Courts have

28  repeatedly found such exceptional circumstances where there are similar or overlapping motions

                                              5

pending in different jurisdictions because the possibility of inconsistent rulings could disrupt the underlying litigation. *See Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429-30 (N.D. Cal. 2014) (so holding and collecting cases); *F.T.C. v. v. A± Fin. Ctr., LLC*, No. 1:13-MC-50, 2013 WL 6388539, at \*3 (S.D. Ohio Dec. 6, 2013) (finding exceptional circumstances where a motion to compel pending in another jurisdiction sought similar documents but was directed to a different party); *Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elec., Inc.*, No. 14 C 3731, 2014 WL 2808984, at \*2 (N.D. Ill. June 20, 2014) (transferring motion given risk of inconsistent rulings that might disrupt management of the underlying litigation).

Exceptional circumstances also exist where failure to transfer would result in duplicative review, or where the issuing court is "in a better position to rule on the . . . motion . . . due to [its] familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014); *see also Parks, LLC v. Tyson Foods, Inc.*, No. MISC.A. 15-634, 2015 WL 5008255, at \*2 (W.D. Pa. Aug. 20, 2015) ("[The issuing] court's familiarity, and the risk that this court will reach a ruling that is inconsistent with the [issuing court's] ruling on already pending discovery motions, are exceptional circumstances that warrant transfer of this matter to that court."); *Moon*, 301 F.R.D. at 30 (exceptional circumstances exist where "[r]uling on the motion to compel would require the Court to duplicate review already conducted by the District of Arizona" and "would also risk disrupting the District of Arizona's management of the underlying litigation.").

Exceptional circumstances are present here. First, Amazon is concurrently filing a motion to compel the production of equivalent documents from the FTC in the Underlying Action, and another motion is already pending in the Issuing Court addressing similar Apple-related issues in the context of a Rule 30(b)(6) deposition of the FTC. Hanson Decl. ¶ 8. Both Apple and the FTC have objected to producing the requested documents, in part, on the basis that other entity should be required to do so if production is ordered. *See* Hanson Decl. Ex. D, at 5 ("Amazon obtained, or had the opportunity to obtain, the information sought in Request 1 from the FTC, a party to the

6

case"); Ex. F (FTC's Objections to Amazon's Second Set of RFPs). If the Issuing Court were to conclude that Amazon is entitled to the requested documents but should obtain them from Apple, rather than from the FTC, and if this Court were to conclude that documents should be obtained from the FTC, it could lead to the absurd result that neither party would produce the documents to Amazon, despite Amazon's right to obtain them from both. Under these circumstances, with the risk of inconsistent rulings and the prospect of duplicative review by both courts, transfer of the motion is warranted. *See A± Fin. Ctr.*, 2013 WL 6388539, at \*3; *Cont'l Auto.*, 2014 WL 2808984, at \*2.

Second, resolution of this motion requires assessment of the relevance of the requested documents and the issues presented in the Underlying Action. Because the Issuing Court is necessarily better positioned to evaluate the motion given its familiarity with the case, transfer is warranted. *See Moon*, 301 F.R.D. at 430; *Wultz*, 304 F.R.D. at 46; *Parks*, 2015 WL 5008255, at \*2.

In sum, extraordinary circumstances exist that warrant transferring this motion to the Issuing Court for review. If, however, the Court declines to do so, it should order Apple to comply with the Subpoena, as narrowed by Amazon in September 25 correspondence, for the reasons discussed below.

**B.      Apple Should Be Ordered to Comply with the Subpoena**

      **1.      The Requested Documents Are Relevant**

The FTC alleges that Amazon's conduct is "unfair" under the Section 5 of the FTC Act. 15 U.S.C. § 45. At a minimum, the FTC must satisfy three prongs to prove its claim: "The Commission shall have no authority . . . to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice [1] causes or is likely to cause substantial injury to consumers which is [2] not reasonably avoidable by consumers themselves and [3] not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). This inquiry requires consideration of relevant industry practice. *See e.g.*, FTC Policy Statement on Unfairness (Dec.17, 1980), contained in *In re Int'l Harvester Co.*, 104 F.T.C. 949, at \*96 (1984) ("The second S&H standard [for establishing unfairness] asks whether the conduct violates public

7

1   policy as it has been established by statute, common law, industry practice, or otherwise."

2   (emphasis added)); *F.T.C. v. Wyndham Worldwide Corp.*, No. 14-3514, 2015 WL 4998121, at *5

3   (3d Cir. Aug. 24, 2015) ("In 1994, Congress codified the 1980 Policy Statement at 15 U.S.C.

4   § 45(n)."); *cf. Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 928 (N.D. Cal. 2012) (plaintiff

5   asserting that Apple's conduct was "contrary to industry standards" and therefore "unfair" under

6   California's Unfair Competition Law).

7       Industry practice is particularly relevant here, where Amazon's in-app business practices

8   were launched and refined in a new and innovative market after the incumbents had become

9   established and had affected consumer expectations.  Moreover, the FTC has not issued any

10  rulemaking that articulates standards relating to unfair acts or practices that would apply to in-app

11  purchases by children.  The FTC has also failed to issue any interpretive rules, statements of

12  policy, or other guidance documents that articulate requirements for in-app billing practices or

13  that otherwise could have put Amazon on notice of the specific standards to which the FTC seeks

14  to hold Amazon.  Thus, Amazon and the Issuing Court are left with assessing, at minimum, the

15  industry practice, which naturally begins by reviewing the practices of the company that

16  popularized the practice (Apple).  Comparison of Amazon's practices with those of its primary

17  competitors in the in-app market—established and respected companies, not fly-by-night

18  operators—is probative of whether Amazon's practices met or exceeded industry standards, and

19  whether Amazon's practices fell below, met, or exceeded consumers' expectations.

20      To meet its burden, the FTC must prove, among other things, that the alleged harm from

21  the purported unauthorized in-app purchases was not reasonably avoidable by consumers.

22  15 U.S.C. § 45(n).  Because Apple was the first company to make available and widely market in-

23  app purchases, many of Amazon's customers likely learned about in-app purchasing before

24  migrating to Amazon's in-app platform, which launched more than two years after Apple's.[3]

25  What those former Apple customers understood of the market—from the disclosures and

26  purchase protocols previously implemented by Apple—is probative of whether Amazon's

27

28      [3] *See supra* note 2.

8

1   customers knew of the myriad ways in which they could prevent their children from making

2   accidental in-app purchases.

3       The FTC must also show that the purported harm was not substantially outweighed by the

4   benefits to consumers and competition. 15 U.S.C. § 45(n). It is axiomatic that a comparison of

5   Amazon's in-app billing practices—including its disclosures, parental controls, password

6   requirements, and liberal refund policies—to Apple's in-app billing practices is probative of the

7   benefits Amazon provided to both its customers and to competition.

8       Furthermore, when asked what specific guidance the FTC gave companies like Amazon

9   with respect to in-app purchasing, the FTC repeatedly referred to its consent decree with Apple,

10  which was announced in early 2014. *See, e.g.*, Hanson Decl. Ex. G (Rule 30(b)(6) Tr.

11  119:23-121:3), Ex. H, at 9-10 ("[T]he FTC's settlement agreement with Apple Inc. concerning its

12  billing practices for in-app charges defines express informed consent in terms that allow

13  considerable flexibility in the precise process or procedure chosen for compliance."). By

14  referring Amazon almost exclusively to Apple's in-app billing practices, the FTC has necessarily

15  made Apple's billing practices relevant to the FTC's claim and Amazon's defenses.

16      Documents sought by the Requests are relevant to the claim and defenses in the

17  Underlying Action. Screenshots or other documents sufficient to show Apple's disclosures and

18  purchase protocols relating to in-app purchasing, the subject of Request No. 1, are probative of

19  the public's understanding of in-app purchasing and potential controls. For example, evidence

20  that Apple disclosed to its customers the availability of in-app purchases is probative of whether

21  Amazon's customers were already aware of the opportunity for such in-app purchases. Likewise,

22  evidence that Apple failed to sufficiently disclose opportunities for in-app purchases has a

23  tendency to show that Amazon exceeded the fairness standards because Amazon disclosed to its

24  customers opportunities for in-app purchases when it began offering them. *See* Hanson Decl.

25  Ex. B (Compl.) ¶ 15.

26      Request Nos. 2 and 3 are also highly probative. Among the elements the FTC must prove

27  to prevail on its claim is that consumers could not have reasonably avoided alleged injury through

28  post-transaction mitigation. *See FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D.

9

Cal. 2000) ("Consumers may act to avoid injury before it occurs if they have reason to anticipate the impending harm and the means to avoid it, or they may seek to mitigate the damage afterward if they are aware of potential avenues toward that end." (quoting *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988)). As a result, Amazon's refund policies and practices are a key issue in this case, as reflected by the FTC's substantial discovery requests on the topic.

Request No. 2 asks for documents sufficient to show Apple's customer-service policies and practices relevant to in-app purchases. A comparison of the two companies' refund policies and practices is probative of whether any harm allegedly resulting from Amazon's practices was reasonably avoidable by its customers.

Request No. 3 seeks documents sufficient to show monthly data relating to Apple's refunds of in-app charges (e.g., refund rates and rates of refund requests that were granted). Comparison of Amazon's generous refund practices with Apple's practices and the data reflecting the rates of refunds denied is probative and could provide benchmarking for a market in its infancy. The FTC, in fact, has asked Amazon deponents about how Amazon's refund rates compared to other platforms' rates, such as Apple's. *See, e.g.*, Hanson Decl. Ex. I (Paleja Tr. 100:5-21), Ex. J (Rouse Tr. 104:23-106:13). Given the potential sensitivity of the requested refund data, Amazon is willing to restrict access to outside counsel only and so informed Apple's counsel on September 25. Hanson Decl. Ex. E.

The benefits of the requested discovery, which is highly relevant to the claim and defenses at issue in the Underlying Action, substantially outweigh any burden on Apple, as discussed below.

### 2.    The Requests Are Not Overly Broad or Unduly Burdensome

Apple's objections that the Requests are overly broad and unduly burdensome lack merit. With respect to its objection that the Requests are "overly broad," the only explanation that Apple provides is that Request Nos. 2 and 3 seek information "unrelated to unauthorized in-app purchases by children." Hanson Decl. Ex. D, at 6, 8. Request No. 2 seeks information regarding Apple's customer service policies for in-app purchasing, including the means by which customers could seek refunds for unauthorized in-app charges. To the extent Apple has distinct refund

10

1  policies for unauthorized in-app purchases made by children, the distinction between Apple's

2  general refund policy and its child-specific policy would be relevant.  To limit any potential

3  burden on Apple, Amazon also informed Apple that it was willing to limit the time period of

4  Request No. 2 to the inception of the Apple App Store through December 31, 2013 (and

5  potentially narrower, depending on the time frame covered by the documents and information

6  provided to the FTC).  *See* Hanson Decl. Ex. E.

7        With respect to Request No. 3, relating to refund data, Amazon has similarly narrowed the

8  scope of its request to the time periods covered by information provided to the FTC (assuming

9  such information was in fact provided to the FTC, as it almost certainly was).  Hanson Decl.

10  Ex. E.  And since there is no way for a company such as Apple or Amazon to know whether a

11  customer's claim that an in-app charge was made by a child is in fact true, Apple's overbreadth

12  objection is likely academic.  In any event, limiting the data as Apple suggests would not reduce

13  Apple's burden in complying with Request No. 3 unless its data provided to the FTC was limited

14  to unauthorized in-app purchases by children.

15        It is highly likely that all, or nearly all, of the documents sought in Request Nos. 1-3, as

16  narrowed, were previously compiled by Apple and provided to the FTC.  As a result, Apple's

17  objection that the Requests are unduly burdensome is meritless.[4]

18      **3.**    **The Information Requested Is Not Publicly Available**

19        Apple contends that Request Nos. 1 and 2 are unreasonably burdensome to the extent the

20  information is publicly available.  Hanson Decl. Ex. D, at 5.  Although this information may at

21  one time have been "public," there is currently no reasonable means for Amazon to obtain the

22  requested, historical information from public sources.  By contrast, the documents are readily

23  available to Apple and likely have already been compiled and provided to the FTC.

24        Apple first claims that Amazon can obtain this information "[m]erely by using the in-app

25  purchase feature in Apple's iOS products—which have been and remain available to the public."

26

27  [4] Amazon also limited the scope of Request No. 1 to the period March 1, 2011, through December 31, 2012, and clarified that "the request seeks to capture changes in the [in-app]

28  purchase flow relevant to alleged unauthorized or accidental purchases, not cosmetic or other nonsubstantive changes."  Hanson Decl. Ex. E.

11

1    In effect, Apple suggests that Amazon should obtain the requested information by downloading

2    all prior versions of Apple's operating system ("iOS") and attempting to make in-app purchases

3    on each one. Apple does not explain how this could be accomplished, and available information

4    suggests it would be impossible, or nearly so.[5]

5         Apple next claims that Amazon should be required to piece information together from

6    "public resources on the Internet, posted by Apple and others." Hanson Decl. Ex. D, at 5. As an

7    example of these public resources, Apple lists two websites, both of which demonstrate the

8    futility of Apple's suggestion. The first citation is to a page on Apple's own website describing

9    Apple's *current* use restrictions for in-app purchasing.[6] But this provides no insight into Apple's

10   historical practices, nor does Apple make such historical information available on its website.

11   The second website that Apple cites is a blog containing a third-hand description of an update that

12   Apple made to its in-app purchase disclosures.[7] While an examination of these and similar

13   sources would provide fragments of information regarding Apple's in-app purchase business

14   practices, it would be impossible to obtain the full historical information sought by the Requests.[8]

### 4.    Apple's Confidentiality Concerns Can Be Addressed Through a Heightened Protective Order

16        Apple further objects to the Subpoena on the grounds that the Requests seek Apple's

17   confidential business information. Many of the requested documents are public facing, but to the

18   extent the Requests seek confidential business information, Amazon has from the outset indicated

---

[5] *See* David Price, "It's here! How to upgrade to iOS 9 on iPhone and iPad," (Sep. 16, 2015), http://www.macworld.co.uk/feature/iosapps/ios-9-download-now-should-you-update-ipad-iphone-how-to-upgrade-ios-8-download-install-3495266/ ("[U]pgrading iOS tends to be essentially a one-way journey. It's always extremely hard (if not impossible) to go back to the previous version afterward"); Christopher Breen, "How to upgrade to iOS 8 (and downgrade to iOS 7)," (Sep. 17, 2014), http://www.macworld.com/article/2683693/how-to-upgrade-to-ios-8-and-downgrade-to-ios-7-if-you-regret-it.html ("Once you update your device to iOS 8 there's very little chance that you'll be able to revert to a previous version. Apple stops 'signing' (authorizing) older versions of iOS just days after releasing a new one. Reverting during this brief window is possible. . . . But once that window closes, there's no going back.").

[6] Hanson Decl. Ex. D, at 5 (citing https://support.apple.com/en-us/HT204396).

[7] Hanson Decl. Ex. D, at 5 (citing http://www.macrumors.com/2013/03/22/apple-adds-offers-in-app-purchases-disclosure-for-app-store-apps/).

[8] Also meritless is Apple's objection that each Request is an "improper interrogatory directed at a non-party." Hanson Decl. Ex. D, at 6, 7, 8. The Requests are narrowly tailored to seek documents *sufficient to show* the requested information; the Requests do not require Apple take any action that could be equated to an interrogatory response.

12

its willingness to stipulate to a heightened protective order. Amazon first informed Apple's

counsel of Amazon's willingness to do so on September 1, 2015 (in connection with Apple-

related information implicated by topics identified in Amazon's Notice of a Rule 30(b)(6)

deposition of the FTC). Hanson Decl. ¶ 9. On September 25, Amazon further addressed Apple's

confidentiality concerns by informing Apple's counsel that Amazon would agree to an outside-

counsel-only restriction for refund-related documents produced in response to Request No. 3.[9]

Hanson Decl. Ex. E.

## VI.    CONCLUSION

For the foregoing reasons, the Court should transfer this motion to the Issuing Court in the

Western District of Washington. Alternatively, the Court should grant Amazon's Motion to

Compel and order Apple to fully comply with the Subpoena, as narrowed by Amazon on

September 25, 2015, within 14 days after entry of the Court's Order.

DATED: September 28, 2015                    **PERKINS COIE LLP**

                                            By: _Julie E. Schwartz_
                                                 Julie E. Schwartz

                                            Attorneys for Amazon.com, Inc.

---

[9] Because Apple signaled it would not be producing any documents, Amazon and Apple
mutually agreed to reschedule the deposition of an Apple records custodian that was set for
September 23. Hanson Decl. Ex. K. Amazon also informed Apple that it is willing to forego a
deposition altogether if the FTC stipulates to authenticity and admissibility of documents
produced by Apple. Hanson Decl. Ex. E. Amazon asks that the Court order Apple to produce a
records custodian for a deposition at a mutually convenient time within 10 days after documents
are produced, in the event that the FTC refuses to stipulate to authenticity and admissibility of the
documents.

13